AO 91 (Rev. 11/11) Criminal Complaint

# UNITED STATES DISTRICT COURT
for the
District of Oregon

**SEALED**

| United States of America | ) | |
|---|---|---|
| v. | ) | |
| RODRIGO DIAZ-LOPEZ (a.k.a. MIGUEL MUNIZ DURON) | ) ) ) ) ) | Case No. 3:21-mj-00064 |
| *Defendant(s)* | | |

## CRIMINAL COMPLAINT
### BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of __March 12, 2021__ in the county of __Multnomah__ in the _____ District of __Oregon__, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. § 841(a)(1) | Possession with intent to distribute controlled substances, in violation of 21 U.S.C. § 841(a)(1) |

(Continued on attached Supplement to Complaint Offense Description)

This criminal complaint is based on these facts:

See the attached affidavit of DEA Special Agent Bradley A. Dixon.

☒ Continued on the attached sheet.

/s/ Signed by telephone
*Complainant's signature*

Bradley A. Dixon, DEA Special Agent
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone at __12:30__ a.☒/p.m.

Date: __March 13, 2021__

*Judge's signature*

City and state: __Portland, Oregon__   JOLIE A. RUSSO U.S. Magistrate Judge
*Printed name and title*



3:21-mj-00064

**United States of America**

v.

**RODRIGO DIAZ-LOPEZ (a.k.a. MIGUEL MUNIZ DURON)**

**COUNT 1**
**(Possession with Intent to Distribute Methamphetamine)**
**(21 U.S.C. §§ 841(a)(1), (b)(1)(A)(viii))**

On or about March 12, 2021 in the District of Oregon, defendant **RODRIGO DIAZ-LOPEZ (a.k.a. MIGUEL MUNIZ DURON)** did unlawfully and knowingly possess with intent to distribute 500 grams or more of a mixture or substance containing a detectable amount of methamphetamine, a Schedule II controlled substance,

In violation of Title 21, United States Code, Sections 841(a)(1) and (b)(1)(A)(viii).

**COUNT 2**
**(Possession with Intent to Distribute Heroin)**
**(21 U.S.C. §§ 841(a)(1), (b)(1)(A)(i))**

On or about March 12, 2021 in the District of Oregon, defendant **RODRIGO DIAZ-LOPEZ (a.k.a. MIGUEL MUNIZ DURON)** did unlawfully and knowingly possess with intent to distribute one kilogram or more of a mixture or substance containing a detectable amount of heroin, a Schedule I controlled substance,

In violation of Title 21, United States Code, Sections 841(a)(1) and (b)(1)(A)(i).

DISTRICT OF OREGON, ss:        AFFIDAVIT OF BRADLEY A. DIXON

**Affidavit in Support of a Criminal Complaint and Arrest Warrant**

I, Bradley A. Dixon, being duly sworn, do hereby depose and state as follows:

**Introduction and Agent Background**

1. I have been employed as a Special Agent by the Drug Enforcement Administration (DEA) since February of 2017. My current assignment is at the Portland District Office where I am assigned to a DEA Federal Task Force Group. My formal law enforcement training includes successfully completing the 18-week DEA basic training course at the DEA academy in Quantico, Virginia. Since then, I have participated in dozens of drug investigations involving controlled purchase operations, vehicle tracking, cell phone geo-location techniques, cell-site simulators, pen register/trap and trace orders, and Title III wiretaps. I have interviewed and operated informants, executed search warrants, arrested and interviewed subjects, conducted physical surveillance, and utilized electronic and video surveillance. I have also worked with and consulted numerous agents and law enforcement officers who have investigated drug trafficking.

2. I submit this affidavit in support of a criminal complaint and arrest warrant for:

- Rodrigo Diaz-Lopez, aka Miguel Muniz Duron ("Diaz")

for violations of Title 21, United States Code, Section 841(a)(1), Possession with Intent to Distribute Controlled Substances (the "Target Offenses").

**Applicable Law**

3. Title 21, United States Code, Section 841(a)(1) makes it illegal to posses controlled substances – including methamphetamine and heroin – with the intent to distribute them.

**Confidential Source Information**

4.      Confidential Source 1 ("CS-1") referenced in this affidavit has provided information to the DEA since August 2020. CS-1 has criminal convictions for misdemeanor assault and felony possession with intent to distribute heroin. CS-1 has admitted to prior involvement in drug distribution and has demonstrated knowledge of drug trafficking and drug pricing. CS-1 has provided reliable information to Investigators who have independently corroborated the information. CS-1's information has resulted in drug seizures and drug-related arrests. CS-1 is providing information in exchange for money. Because CS-1 has provided reliable information that has been independently corroborated and has led to drug seizures and drug-related arrests, I believe CS-1 is a credible, and that CS-1 is a credible and reliable source of information.

**Statement of Probable Cause**

*Background of the Investigation*

5.      In October 2020, Investigators began investigating a Drug Trafficking Organization (DTO) suspected of importing methamphetamine, heroin, and counterfeit oxycodone pills suspected to contain fentanyl from Mexico into California, then destined for Distribution in Oregon and Washington. Over the course of the Investigation, Investigators obtained information about the DTO's operations from confidential sources, physical surveillance, electronic surveillance, controlled purchases of narcotics, and ▓▓▓▓▓▓ ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓. Resulting from the investigation to-date, Investigators have seized over 35 kilograms of methamphetamine, over 15 kilograms of heroin, over 500 grams of cocaine, over 4.6 kilograms of counterfeit oxycodone pills suspected to contain

fentanyl, over $90,000 in suspected drug proceeds, and multiple firearms. As detailed herein, some of these drugs are directly attributable to Diaz.

6. During the course of the investigation, CS-1 identified Diaz as a large-scale methamphetamine distributor using 503-462-8700 ("Target Cellphone 7") and 971-335-6551 ("Target Cellphone 8").

### *Diaz Sells Methamphetamine to CS-1*

7. On January 20, 2021, CS-1 engaged in a text message conversation with Diaz via Target Cellphone 7. In summary, CS-1 requested to purchase one pound of methamphetamine from Diaz for $3,300. Then, Diaz, using Target Cellphone 7, called CS-1 and engaged in a voice call during which they discussed a time and location to conduct the transaction.

8. The next day, on January 21, 2021, Investigators met with CS-1 at a predetermined neutral location. While there, Investigators searched CS-1's person and vehicle and did not locate any weapons or contraband. Investigators then provided CS-1 with $3,300 in government funds and an audio recording/transmitting device for CS-1's safety, and to record the pending transaction. During this time, other Investigators had established covert physical surveillance in the area of the agreed upon meeting location in Portland, Oregon, anticipating that CS-1 would be able to direct Diaz to that location.

9. While with Investigators at the neutral location, CS-1 called Diaz via Target Cellphone 7 and informed Diaz that CS-1 had the money and was ready. Diaz said he was busy and would send someone to CS-1. Investigators then followed CS-1 from the neutral location to the agreed upon meeting location. Investigators maintained surveillance of CS-1's vehicle, which parked in the parking lot of the agreed upon location. While there, CS-1 received an

incoming call from Diaz's Target Cellphone 7.  During the call, Diaz told CS-1 that "the dude" was almost there.

10. Shortly after this call, Investigators observed a brown Chevrolet Tahoe arrive in the parking lot and park immediately next to CS-1's vehicle.  Investigators observed movement between the two vehicles, then heard CS-1 engaging in a conversation with someone through CS-1's transmitting/recording device.  Investigators then observed CS-1's vehicle and the brown Chevrolet Tahoe depart from their respective parking spots.  The brown Chevrolet Tahoe travelled to a different part of the lot and parked.  Investigators maintained surveillance for a short period of time before terminating surveillance.

11. After CS-1's vehicle departed, other investigators maintained surveillance of CS-1's vehicle as CS-1 travelled back to the predetermined neutral location. While there, investigators recovered a brown paper bag from CS-1's vehicle containing two plastic bags of suspected methamphetamine weighing approximately 480 gross grams (with packaging). The substance later field tested presumptive positive for methamphetamine. Investigators also searched CS-1's person and vehicle and did not locate any additional money, weapons, or contraband.

12. While at the neutral location, Investigators interviewed CS-1. CS-1 said the individual who delivered the drugs arrived in the brown Chevrolet Tahoe. CS-1 said he/she only coordinated with Diaz telephonically over Target Cellphone 7, and assumed Diaz must have then coordinated with and sent the individual in the brown Chevrolet Tahoe with the drugs to deliver to CS-1.

13. Based on the foregoing, I believe Diaz sent a drug courier to deliver over 400 gross grams of methamphetamine in violation of the Target Offense.

14. ████████████████████████████████████████

15. CS-1 later identified Target Cellphone 8 as Diaz's new phone and engaged in undercover voice calls and text messages with Diaz indicating Diaz was using Target Cellphone 8 to continue drug distribution. ████████████████████████████████████████

16. Based on CS-1's information, review of geolocation data for Diaz's Target Cellphones 7 and 8, and physical surveillance, Investigators identified Diaz's residence as being located within the Stark Street Station apartment complex located at 611 SE 190th Ave, Gresham,

Oregon. ███████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████

████████████████████████████████.

17. While there, Investigators observed a suspected co-conspirator/courier arrive and enter Apartment Apartment A202 within the Stark Street Station apartment complex while carrying a black bag. Minutes later, Investigators observed Diaz exit Apartment A202 and walk towards a bank of garages located at the north end of the complex. Investigators observed Diaz open and enter the second garage from the far west end of the garage facility ("Diaz's Garage"). Investigators then observed Diaz close Diaz's Garage door and walk back into Apartment A202. Shortly thereafter, Investigators observed the suspected co-conspirator/courier exit Apartment A202, this time without the black bag, and depart. Investigators photographed Diaz as he accessed the garage, which photograph was later shown to CS-1. CS-1 identified Diaz as Diaz based on the photograph.

### Search Warrant at Diaz's Residence and Garage

18. On March 12, 2021, Investigators applied for and obtained a search warrant authorizing Investigators to search both Diaz's Apartment A202 and Diaz's Garage. Later that evening, Investigators conducted the search of the apartment and garage.

19. Investigators knocked loudly on the door of Diaz's Apartment A202 while announcing "Police! Search Warrant!" Investigators then made entry through the front door, which was unlocked. Investigators immediately encountered Diaz and another female, at which time Investigators observed Diaz drop a small amount of methamphetamine and cocaine on the

floor. Diaz and the female were then detained in handcuffs without incident.

20. During the search of Diaz's Apartment A202, Investigators observed the small amount of methamphetamine and cocaine on the kitchen floor that Diaz had dropped, a digital scale on the kitchen table, and a cellphone. Investigators called the known cellphone number of Target Cellphone 8 and observed the cellphone on the kitchen table ring. This cellphone was also located next to a wallet that contained a Mexican identification card in the name of "Miguel Muniz Duron" with Diaz's photograph on it. Investigators also found and seized an amount of U.S. currency estimated to be around $30,000 (pending official count).

21. While inside Apartment A202, Investigators asked Diaz if he had keys to Diaz's Garage so Investigators did not have to cut a lock or make forced entry. Diaz said he did not have a garage. Investigators referred to Diaz as "Rodrigo," and he continually denied that "Rodrigo" was his name and claimed to be named "Miguel Muniz Duron," which was depicted in the identification found in the wallet in Diaz's kitchen. Investigators then found several sets of keys inside Diaz's kitchen, and tested the keys on the lock for Diaz's Garage. One of the keys unlocked Diaz's Garage.

22. Investigators then accessed Diaz's Garage with the keys and searched the garage. Pursuant to the search of Diaz's Garage, Investigators found and seized over 3,800 gross grams (gross grams = weight of drugs with packaging) of counterfeit oxycodone pills, over 2,400 gross grams of methamphetamine, over 3,000 gross grams of heroin, an assault-style rifle, a handgun, and ammunition. Portions of the methamphetamine and heroin were later field tested and tested presumptive for methamphetamine and heroin, respectively. For Investigators' safety, the counterfeit oxycodone pills were not field tested. All of the seized drugs will be sent to a DEA

lab for further testing. The image below depicts the guns, drugs, and drug proceeds seized during the search:



23. Investigators arrested Diaz for violations of the Target Offense and Diaz was transported to the DEA Portland District Office for booking and a post-Miranda interview. During the booking process, Investigators collected Diaz's fingerprints. Based on the fingerprints, Diaz was positively identified as Diaz. Diaz was therefore arrested and booked as "Rodrigo Diaz-Lopez" aka "Miguel Muniz Duron." Investigators provided Diaz his rights per Miranda, then immediately invoked his right to an attorney and no questions were asked.

## Conclusion

24. Based on the foregoing, my training, experience, consultations with other Investigators, I believe Diaz possessed with the intent to distribute over 2,400 gross grams of methamphetamine and over 3,000 gross grams of heroin, all in violation of the Target Offense. I

therefore request the Court issue a criminal complaint and arrest warrant for Diaz for these violations.

26. Prior to being submitted to the Court, this affidavit, the accompanying complaint and the arrest warrant were all reviewed by Assistant United States Attorney (AUSA) Paul Maloney, and AUSA Maloney advised me that in his opinion the affidavit and complaint are legally and factually sufficient to establish probable cause to support the issuance of the requested criminal complaint and arrest warrant.

### Request for Sealing

26. It is respectfully requested that the Court issue an order sealing, until further order of the Court, all papers submitted in support of the requested criminal complaint and arrest warrant. I believe that sealing these documents is necessary because the information to be seized is relevant to an ongoing investigation, and any disclosure of the information at this time is likely to seriously jeopardize the ongoing investigation. Premature disclosure of the affidavit, the criminal complaint, and the arrest warrant may adversely affect the integrity of the investigation.

/s/ Sworn to by telephone
*In accordance with Fed. R. Crim. P. 4.1*
Bradley A. Dixon
DEA Special Agent

Sworn to by telephone at __12:30__ a.m./p.m. this __13__ day of March 2021 in accordance with Fed. R. Crim. P. 4.1.

_____
HONORABLE JOLIE A. RUSSO
United States Magistrate Judge